have limited time. When you see the yellow come on, that means you have a couple more minutes. So start finishing up. When the red comes on, you are done, unless we're still asking you questions, in which case you can't run away. You have to answer our questions. All right. With that, we'll go ahead and get started. And we're starting with the first question, 20326, U.S. v. Breimeister. And we'll start with Josh Schaffer for, I'm sorry, I may be mispronouncing the name, Breimeister. May it please the court, counsel for the government. My name is Josh Schaffer. I'm from Houston. I represent the appellant, Scott Breimeister, in this appeal from an order denying a motion to bar a retrial under the Double Jeopardy cause. The issue presented in this case is whether Double Jeopardy bars a retrial or the district court declared a mistrial sua sponte based on governmental misconduct over the defendant's objection. The roadmap that I'll follow this morning, I'd like to cover four areas. Number one, Breimeister objected to the mistrial and did not consent to it. Number two, manifest necessity did not exist to declare the mistrial. Number three, even if manifest necessity existed, Double Jeopardy bars a retrial where the government misconduct caused the mistrial over the defendant's objection. And number four, if a culpable mental state of government actors is relevant to the Double Jeopardy inquiry, the district court erred in denying Breimeister's repeated request for an evidentiary hearing. I'll begin with Breimeister objected to the mistrial and did not forfeit the Jeopardy claim. The law, Federal Rule of Criminal Procedure 26.3, states that before ordering a mistrial, a court must give the defendant and the government the opportunity to comment, state whether it consents or objects, and suggest alternatives. This court requires a defendant to timely object to a court's sua sponte declaration of a mistrial. If not, he impliedly consents to it and may be retried. The determination whether a defendant objected to the mistrial is made on a case-by-case basis, and the critical factor in the analysis is whether the defendant's objection gave the court sufficient notice and opportunity to resolve the defendant's concern. A defendant is not required to repeat objections or renew feudal objections once the court rules. Here, Breimeister, on the request of the court... So why did the, why didn't his lawyer say anything when the judge said, I'm going to grant a mistrial? Well, I was the lawyer, so I'll tell you. Okay. So the night before, when things had gotten really ugly and the court gave the government a deadline to complete its disclosure of all the Brady material, the court instructed the parties to file a written pleading not only addressing how the suppressed evidence impacted the trial, but also what relief they wanted. That was the Rule 26.3 request to comment or object. So that was a written pleading filed the following morning before the court announced its decision to declare the mistrial. Breimeister, in my words, wrote in the King's English, Breimeister opposes a mistrial at this juncture.  Unless. And there were three conditions upon which he would have consented to the mistrial. The district court granted one of the conditions. No, he did not, Your Honor. Said it wasn't the fault of the defendant or the request of the defendant. But the condition was that it was based, there was sua sponte based on governmental misconduct. And the court specifically expressly said that morning in his oral order that he was not making a finding as to whether the mistrial was the result of governmental misconduct, that he was saving that inquiry for the future. And in fact, in the order denying the double jeopardy motion, the district court makes express findings that the government did not engage in misconduct. The government has fought every step in the way whether this was misconduct. There was never a finding of misconduct by the district court. And specifically at the time it declared the mistrial, it did not make such a finding. But back to Judge Haynes's question. Why wouldn't you have cleared that up when the district court said anybody got anything else? For two reasons. Number one, the answer was, no, we don't. Number one, the district court did not say, does anybody have anything to add at this point? The record from the morning of December 13, when the district court announces the mistrial, shows that the court began by saying, I've read your filings, which includes Breimeister's objection to the mistrial. I would let you comment, but nothing that you would say would change my mind. So the court was telling us, any objection would be futile at that point. I've made my decision. The court then spoke for about 30 minutes uninterrupted, and for the first time throughout a six-week trial, concluded a courtroom proceeding without asking if anybody had anything to say. The judge literally stormed off the bench, said the jury will be here at 1230. I expect you to be here as well. And that was it. Now, the law from the Supreme Court and this court make it clear. Once the court rules, and if it's already on notice as to what your objection is, and your concerns are clear, which they were through the written pleading, once the court rules, you don't need to object again. And the government would require more of us than rule 26.3 requires, because rule 26.3 simply says the court has to give the defendant the opportunity to comment or object before declaring the mistrial. It doesn't say, once the court overrules your objection, then you have to object again. So that would be futile. Most important, the district court made a finding below that the jeopardy claim is not frivolous. And that's why we're here now. That confers jurisdiction on you for an interlocutory appeal. That finding includes an implicit finding that I objected properly to the jeopardy issue, to the mistrial. Otherwise, if I consented to it, the court would have found it was a frivolous claim, and we wouldn't be here right now. The government has not addressed that finding of non-frivolousness, and that's critical. So the issue is preserved, and we'll move along to the jeopardy analysis. And the important points of double jeopardy, the general rule is that once the jury has sworn, the defendant's entitled to a verdict from that jury, unless the defendant consents to the mistrial, which we didn't, or manifest necessity exists to declare the mistrial. Now, the manifest necessity test— Well, the problem, you know, with what you wanted the judge to do is tell the jury, oh, what you heard a week ago, you should forget that part, and so on. That's really hard. I mean, I was not a state district judge of criminal cases. It was civil cases. And I was always very impressed with my jurors, but trying to tell them, oh, remember back, you know, a week ago, la, la, la, I think that's just really difficult. I would find it hard to be told some specific thing from a week ago I had to forget. Now I remember it, and you're asking me to forget it. I mean, that's just complicated. So I think the judge was thinking it's too much la, la, la, and was trying to help your client because of these things that came in that you all would have been able to handle better had you known about it. Well, two responses, Judge Haynes. Number one, we already had precedent in this trial of the judge needing to instruct this jury to disregard certain testimony and evidence and exhibits. The week before, when things really started to unravel with the testimony of a witness named William Chan, the court gave an instruction to the jury that both admonished the government for the mistakes it had made and instructing the jury to disregard certain evidence, testimony, and exhibits, and the jury said that it could follow that instruction. There was no concern about the jury being able to follow that instruction. That's one witness, and then we have four witnesses, then it's six witnesses, it's a third of the testimony over a five-week trial, and the district court said there's nothing that can be done here. You can't unring this bell. Well, and so, but my point is, number one, we had a special jury, which the court commented throughout the record, throughout the trial, this was the most diligent, attentive, hardworking jury he'd ever had. He conferred with that jury every step of the way on scheduling matters. Do you want to work the week of Thanksgiving? Again, I'm not criticizing the jury. I made that clear. I'm impressed with the jury. I just think it's one thing to say, oh, what you just heard from Judge Haynes, ignore that. That's much different from after you've heard, let's say we talked for a few weeks, and then someone said, oh, yeah, what she said at the 724 on your watch, she should be, you should forget that. And my concern is that there was never any deliberative process between the court and the parties as to how do we try to craft instructions that are manageable that this jury might be able to follow, even if it's for multiple witnesses. Oh, well, the court found that wasn't workable. There's manifest necessity for a mistrial. What's the standard of review of the court's manifest necessity finding? De novo, Your Honor. De novo? Yes, Your Honor. But is it a fact-finding for clear error or— Manifest necessity is a legal finding. To the extent the court makes fact findings that are relevant to the analysis, those are clear error. However, in Ray Mercer, this court found that fact findings that are based on the wrong legal standard are not— There would be an abuse of discretion if the court misapplied the law. It'd be an abuse of discretion. That's true. But it's a de novo analysis, the jeopardy claim, the mistrial. But getting to Judge Wilson's question about the volume of witnesses, there was never any deliberative process between the court and the parties as to how to fashion instructions to disregard. We're not talking about striking the entirety of testimony. The judge, in the written order denying the jeopardy motion, the judge considered three different possibilities. Number one, instructions to disregard, and made a finding that the jury would have to unhear weeks of testimony. That's not supported by the record. The judge could have said, related to this specific issue that we now have conflicting information in the disclosed reports, disregard that. And then the defendants would have had an opportunity to recall those witnesses and ask them about those specific issues, impeach them with the prior inconsistent statements. Second, the written order identifies the possibility of recalling witnesses and finds that it would extend the trial an untold number of weeks. There's no facts to support that. We're not talking about extending the trial weeks. We're talking about, at most, a couple days. You're talking about a few witnesses that you need to go back over a few areas from these suppressed notes and reports to clear up and elicit that testimony. The jury, during Vore Dyer, was prepared for an eight-week trial. We were in the beginning of the sixth week. We were running ahead of schedule. The government said they only had one or two more days to present their case. Another two days would not have interfered with the jury's schedule at all, and there's no factual support for the finding that it would have extended the trial an untold number of weeks. Number three, the written order considers that admonishing the government on the Brady violation might taint the jury's view of other evidence. There's no factual basis for that. That finding assumes the jury would not have followed the court's instruction not to do that very thing. Lord, have mercy. We're not there. The district court is there. The district court's been interacting with the jury, as you said, on a daily basis for five weeks. The district court has heard the witnesses. The district court has heard the sum total of the testimony. The district court has projected how much longer it's going to take. We're heading into the Christmas holidays, if I remember. I mean, this is right around December. Early, mid-December. How are we to assess any of this? Because we weren't there. But the record reflects the very issues that we're talking about. But some of this is completely within the district court's discretion, I think, because there's no way we can assess. The district court does not have unfettered discretion to violate a constitutional right to get a verdict from the jury that's been sworn. Of course it doesn't. But the district court is tasked with making calls in real time as these things unfold. And there's a lot of perception there that we just can't see on a cold record. But as the Supreme Court said in Downham, it's improper to declare a mistrial to give the government a more favorable opportunity to convict at a retrial. And the concern that an admonishment of the government in front of the jury might make it hard for this jury to be fair to the government is giving more weight and more protection to the government's concern about prejudice of having to finish that trial than it is Mr. Breimeister's prejudice of having to be tried a second time. I think the easiest way for the court to decide this case without having to get into the thornier question of whether manifest necessity and the Oregon v. Kennedy goading test applies when the defendant objects to the mistrial, which would be new law, totally new law, I think the easiest way to decide this case is to rule that the district court did not have manifest necessity. That's a narrow opinion that dodges those trickier questions. And the basis for that would be this court's decisions in Fisher, which is the most important precedent on this issue, and then last year's decision in Lewis v. Bickham. And both of those provide a roadmap to decide that no manifest necessity existed. Fisher instructs that the strictest scrutiny of the district court's decision applies when the basis for the mistrial is the unavailability of critical prosecution evidence. That's what we have here. Strict scrutiny requires the government to prove that the district court had no alternative but to declare a mistrial, that literally no alternative existed. And Fisher faulted the district court for failing to ask questions about those alternatives. It held that scheduling concerns don't justify a mistrial. Lewis also applied strict scrutiny and held that the court should have asked the jurors about their schedules before declaring a mistrial. Here, both Breimeister and the government asked the court to keep trying the case. Both parties proposed alternatives short of the drastic measure of a mistrial. Applying Fisher and Lewis, the district court erred in failing to discuss proposed alternatives with the parties and the jury to determine if the jury, number one, could follow instructions to disregard evidence, number two, could tolerate changes to the trial schedule, and number three, could return a fair verdict even if the court admonished the government for the Brady violations. The district court erred in finding manifest necessity existed to declare a mistrial. Now, the law of double jeopardy places a high degree of necessity before a district court can declare a mistrial, and the government has a heavy burden to justify the retrial. Once the defendant shows that it's not a frivolous jeopardy claim, the burden shifts to the government to prove that jeopardy does not apply. The problem with the district court's analysis and order denying the jeopardy motion, it failed to consider that the government had a heavy burden to prove jeopardy did not apply. It did not apply the strict scrutiny standard to the mistrial analysis. It did not resolve any doubts in favor of Mr. Breimeister, which is what the Supreme Court requires in Dunham. The court was more concerned with protecting the government from the prejudice of finishing that trial than protecting Breimeister from the prejudice of being tried twice. The court did not consider the importance to Breimeister of what the Supreme Court said in Jorn of being able to finally conclude his confrontation with society through the verdict of a jury that he believed was favorable to him. I took an enormous risk objecting to that mistrial because if the court ruled in my favor and allowed us to keep going, I would have waived any opportunity to complain about that suppressed evidence. I would have had to live with whatever verdict we got. I should be rewarded with that. You saved time for a vote. Thank you. We'll now hear from Samantha Bateman for the U.S. Thank you and good morning, your honors. May it please the court, Samantha Bateman, appearing for the United States. As this court is well aware, the only issue that's before the court right now on interlocutory appeal is this double jeopardy claim, which fails under the law for two reasons. First, because the defendant didn't clearly and contemporaneously object at the time the mistrial was declared. And second, and perhaps even more straightforwardly, because this experienced district court judge found there was a manifest necessity for the mistrial. Because the court touched on the first issue, I do want to make sure to discuss the lack of objection that the defendant raised at the time the mistrial was declared. Because there was that written filing earlier that my colleague refers to, but the language that he used in that filing, and as Judge Wilson pointed out, it was, I object to the mistrial unless certain circumstances are met. And one of the circumstances uses the exact same language, pretty much verbatim, as line one, sentence one of Defendant Brian Meister's opening brief on this court, where he says, the court declared a mistrial sua sponte based on governmental misconduct over Defendant Appellate Scott Brian Meister's written objection. Now, to be sure, the district court did not find any intentional or bad faith behavior by the trial prosecutors here, but the exact same language that he told the district court would be a circumstance under which he would consent to a mistrial is now what he's telling this court, in fact, happened. So at a bare minimum, there was enough confusion at that point in the record that it really was incumbent on him. But I thought counsel opposite said that, I'm sorry to interrupt, but I thought counsel opposite said, well, there was no opportunity to clarify because the district court had already made its decision by the time it came out and gave its soliloquy for 30 minutes or what have you. Well, so there is still another moment and another opportunity to object. And we'd point the court to page 9134 in the record, where the district court did take a brief recess then, but then brought everybody back in and turned, in turn, as was required to do under Rule 26.3, to each party and said, counsel for the government, anything that you want to say, counsel for the defense, anything further. So that was... That's, I guess, what I was thinking of when I asked counsel opposite. I mean, I guess the question is, was it futile at that point to make an objection or do anything else, given the filing that had occurred with these conditions? I mean... It wasn't futile in the sense that it could have preserved the objection. It could have made clear that notwithstanding that what he said in his filing was, I would consent to a mistrial under certain circumstances. He could have made clear at that point. And the language that this court has used is that the district court needs to have notice and a fair opportunity to resolve the defendant's objection. That's what I'm trying to understand because as a state district judge, again, on civil rather than criminal, but when I ruled on things, the lawyers didn't necessarily just stop talking. Most of the time they said, objection, this, this, this. Particularly if I would have said, anyone have any extra comments? Absolutely, they would have screamed out, well, you shouldn't be doing this. So the fact that everybody said no would make me as the judge think, well, they think I've ruled correctly even if they don't like my ruling. I think that's right. And I think that was what this district court probably came away with, the impression that nobody was really objecting at that point. Although there had been these written filings, there were discussions in those filings about the circumstances under which a mistrial would be required. This district judge is very experienced. He was very thoughtful, and he explained the rationales and reasoning for the mistrial, and then no one objected. So I do think the record leaves the impression that no one was objecting. But did the judge give the impression that if you say more, he's going to be mad at you? You know, that's what your opponent seems to be saying. I was always respectful of people making objections, whether I liked them or not as a judge. But if the judge is like, shut up, well, I don't know that when I was a lawyer and I did have some judges say that, I just trickled one little sentence to make sure I could appeal it. I personally was not the trial counsel in this case, so I can't comment on what may have happened, the atmospherics in the courtroom. But the record certainly doesn't reflect anything like that. He was giving both sides an opportunity to be heard. And I think this court can see, Mr. Schaffer is obviously a very capable lawyer and no shrinking violet. So he could have stood up and told the court, just to be clear for the record so we can preserve this for appeal, I object to this mistrial. And he didn't do that. Is it fair to say the district court found government misconduct, but just also found that it wasn't deliberate or goading or intentional to deprive the defendants of fair trial? I don't think it's quite fair to say misconduct because that sort of implies that there was something intentional that went wrong here, some kind of malfeasance. I think what the district court did find, certainly, and we agree there were missteps here, there were errors, there was discoverable information that should have been turned over earlier and wasn't. Brady violations, right? No, we don't agree that those are Brady violations. It wasn't suppressed. And this is not a Brady case. The due process claim is not at issue before this court, but this court has never held that material that's produced mid-trial is suppressed. So we would argue it wasn't material, it wasn't actually suppressed. It wasn't a Brady violation. Notwithstanding that, our policy, of course, is to turn over this kind of material as early as possible or certainly pre-trial. If these trial prosecutors had known that these other handful of reports hadn't been disclosed, they would have disclosed them just like they disclosed the other 250 plus reports that they did turn over in this case. I think the district court did find that it was inadvertent that this happened. It was unfortunate. So describe for me again, in your words, what the district court said in terms of tracking the conditional objection raised by the defendant before. The district court didn't say much about the objection. I mean, if it wasn't, no, I'm just saying if it wasn't misconduct, what did the district court say were the lapses by the government? Maybe lapse is a better word. Well, the district court just said at that time that it was leaving for another day the determination of whether it was an intentional lack of disclosure or a mere inadvertent error. So it didn't make any ruling at the time it declared the mistrial on that. But it did then walk through, and this is sort of the second reason, the second way that this court could affirm the district court's ruling, it did walk through, the court walked very clearly through its reasoning for finding that there was a manifest necessity for the mistrial. And to be clear, that's not a magic words test. The district court, I don't think, used the word manifest necessity at the time. He did use it in his later written ruling, but he doesn't have to. He just had to make clear on the record the reasons that he thought the manifest necessity existed for declaring the mistrial and make clear that he considered other reasonable alternatives, which he certainly did. So in this case, the trial had unfolded for some five, six weeks. There were at least six witnesses who had been affected by the new disclosures that came to light in the middle of the trial. And it wasn't primarily about, I know my colleague has referred to scheduling considerations and that the district court should have conferred with a jury or asked them about their schedules, but it wasn't about the scheduling issues. The jury perhaps could have withstood a continuance or come back for a couple of extra days of trial to allow these witnesses to be recalled. The district court really said, it's about the fact that you can't unring the bell after hearing that many weeks of testimony from that many witnesses. It's just not fair or reasonable to expect that even the best and most diligent jury could really follow an instruction to forget everything they'd heard before and then substitute in new testimony. And so that's what he was making his finding based on. And it wasn't just based on this trial, which he had been the presiding judge for, but it was also, as he told the parties, based on his experience, he's been a district judge for over a decade. He's been on the bench for over a decade. And he told the parties had presided over a hundred jury trials. He was bringing that considerable experience to bear and making the finding that these alternatives just weren't going to be sufficient to ensure a fair trial. And this court has always been very deferential to district courts in making that assessment. I was going to ask, do you agree with how counsel opposite portrayed the standard of review? I mean, how much of this is de novo? How much of this is clear error? How much of this is abusive discretion? So the overall standard for a double jeopardy claim on appeal is de novo. But specifically to the manifest necessity finding, the courts have always recognized that district courts exercise sound discretion there. So that is typically reviewed for abusive discretion. The Supreme Court has a relatively recent decision, Renico v. Lett, it's at 130 Supreme Court, 1855, that discusses that standard. This court, in its Bauman case, says that appellate courts shouldn't second guess district courts when they make determinations about manifest necessity. And it's really just because the district court is the one that's on the playing field. They're closer to the ground and able to observe how the trial has unfolded, how the jury seems to be handling issues, and whether it would be fair or reasonable to expect that particular jury to render a verdict. The law is also very clear that if the district court considers the alternatives and finds a manifest necessity for a mistrial, the double jeopardy clause doesn't bar a retrial under that circumstance. So we'd submit that the court should defer to the district court's discretion here. And there is a recognition that there's sort of a sliding scale overview, that the court should look a little bit more closely at situations that are prompted by something the government has done. But that's typically in a case where the government is saying one of its witnesses is unavailable or something like that, and is asking for a mistrial and then the chance to bring back in another jury in order to do a new trial and present new evidence. But both sides were asking to continue the trial, right? Originally, yes, they submitted all kinds of different alternatives, but no one was able to agree on one. And ultimately, when the mistrial was declared, the government didn't object either. And we've recognized since that this mistrial was the appropriate outcome in this case. It was just going to be too difficult to unring the bell. And it's not just because of the number of witnesses, but also the additional complication that this was a multi-defendant case. One of the defendants was actually dismissed because the government decided in the exercise of its prosecutorial discretion that based on the new information that came to light, a new proffer that it received from defense counsel, the government didn't think it was in the interest of justice to proceed against that one defendant. And so the district court, I think, was rightly concerned about, well, what do I do with all of the evidence that's been presented by that defendant, all of the cross-examination that that defendant's counsel has offered, and how do we unring the bell and have the jury ignore everything that's happened with co-defendant number four now that he's been dismissed? Yeah, to me the problem is that it's not just, it's not like one whole witness gets thrown out the door. That would be relatively easy, you know, witness X, please disregard them. But that was not the intent. The intent was parts of witness X, but other parts of witness X were okay. So that to me is what's hard because it's a lot of la, la, la, la, la. Were the jurors allowed to take notes? I'm not certain the answer to that question. Because that also could impact things if they're just trying to, I, maybe all the jurors could memorize every word made in six weeks. I'm not sure that's something I could do even as a jury, a juror. I like to take notes because that helps me remember things, particularly the order of them and the this and the that. Right, I don't know if this jury was taking notes at the time. My colleague who was there might know better. But I do know that it was not just that the jury was not going to be able to go back and parse through either its memory or its written notes. It's that the district court itself, he said, I'm not even sure how I'm going to do this and go back and, you know, pull up the trial transcript and go back and dissect. Well, you know, on this morning, this is the testimony that you should remember and this is the testimony that you shouldn't. And these are the exhibits that are in and these are the exhibits that are out. It was just too much surgery that would be required on this trial. We all recognize that it was an unfortunate situation that the court found itself in. But faced with a number of non-ideal alternatives, the district court exercised its sound discretion and picked the one that was most reasonable, which was finding a manifest necessity and declaring this mistrial. I do want to also touch very briefly on the exception that Mr. Breimeister tries to urge the court to create to the manifest necessity test. There is no such exception under the law to the manifest necessity test for cases that arise in this posture. The manifest necessity test applies across the board at least any time a defendant preserves an objection to a mistrial this court is a case that predated the Supreme Court's decision in Oregon versus Kennedy. The Alford case in this court has recognized since in cases like Singletary that any of the language in those pre-existing cases like an Alford about government overreaching, perhaps being an exception, has been abrogated by Kennedy. Kennedy clearly rejected that test as too amorphous and not easily administrable. And in addition, although this court doesn't have a specific case on this point, there are cases from a number of other circuits that have addressed circumstances like this that we've cited in our brief and have found that there's a distinction between a double jeopardy claim and a due process clause or a Brady-based claim, and that even in a case where there has been evidence that has not been turned over timely, if there's a manifest necessity for a mistrial, that ends the inquiry on the double jeopardy claim. The rest of it is for another day, not before the court on interlocutory appeal right now. So the Chapman case in the Ninth Circuit says that. Davis out of the 10th, Curry out of the 8th, and Coleman out of the 3rd. And we'd encourage... There are things that if we affirmed, and I'm not saying we will, but if we did and a new trial was held and there was a conviction, there are some other things that would be considered. That's right. On that appeal. That's correct. Mr. Breimeister has also raised this due process argument. He could certainly continue to press that before the district court. And once there were a final decision on that, which there hasn't even been by the district court, but once there is a verdict and a decision on the due process claim, this court could consider that on appeal. But that's not before the court right now. It's just the double jeopardy question, which really just turns on, did he object? And even if he did, was there manifest necessity to declare the mistrial? Finally, he also does raise the second question about an evidentiary hearing being necessary. So I do want to touch on that very briefly as well. But the court can easily dispose of that second question presented because that was very clearly waived, not just forfeited, but just outright waived. So on pages 93, 67 to 69 of the record, he told the district court on a couple of occasions, the court can quote, resolve the double jeopardy claim without an evidentiary hearing. But if the court denies the double jeopardy claim, then the evidentiary hearing is necessary with respect to the next claim, which was this wholly separate due process claim. So he told the district court, I'm not asking for the hearing on the double jeopardy claim. So the district court didn't need to hold an evidentiary hearing. But in any event, the standard of review there is also abuse of discretion. And this court did a number of things, not just to take the government at its own word, but really to develop the record and probe the received written filings from the parties, received evidence submitted by the government about its internal investigation into what happened here, and then pointedly questioned the government trial counsel for about 20, 25 pages of the record at 91, 71 to 93 about what happened here. So he really made a very fulsome record, and it wasn't necessary to have a full blown evidentiary hearing or certainly was not an abuse of discretion. Again, and I'm not saying we will, but if we did affirm on this point, is he going to be the only defendant? Yes, at this point, all of the other defendants are all gone, led, and they've actually been sentenced, I think, all to probationary sentences. So at this point, the only piece remaining of the case is Mr. Brimeister's. In conclusion, the government does own up to the missteps that happened here. We are committed to making sure that if there is a retrial, if this case goes forward, that nothing like this will happen again. But the district court correctly found here that there was no intentional or bad faith withholding of evidence or misconduct by the government, and the district court, in the exercise of its discretion and experience, found there was a manifest necessity for this mistrial. So under these circumstances, we'd respectfully ask that the court affirm. There are no further questions. Thank you. Okay. We'll now have the rebuttal. May it please the court. The government effectively had two sets of books. The prosecutors disclosed to the defendants the clean set of books that did not contain all the Brady information. The case agents possessed the real set of books with the cash, with the Brady. Now, Tiles v. Whitley and its progeny holds trial prosecutors constructively knowledgeable and constructively possessive of everything in the possession of the prosecution team. Those trial prosecutors are responsible for what those case agents had in those handwritten notes. They failed to produce them. The government asks, and not only did they fail to produce them, they did not voluntarily produce them mid-trial, like you sometimes see where the government innocuously or inadvertently fails to disclose something and then all of a sudden it comes to their attention. They were caught trying to suborn perjury from William Chan, and as a consequence of being caught doing that, at my request, the court ordered the government to disclose all the case agent handwritten notes, at which point a rolling production over days of 260 sets of witness interview handwritten notes, nine typed witness statement reports that had not been disclosed previously, including two witnesses who'd already testified, and the government acknowledged at that point those witnesses had provided testimony that was inconsistent with what they previously told case agents. None of that was voluntarily disclosed. We had to catch them doing it. That is the essence of misconduct, and yet the government proposes to this court a rule where prosecutors can try a case dirty once, and if they get away with it, great, but if they get caught, they get a chance to try it clean the second time. That violates public policy at its core, and the Supreme Court has held that the double jeopardy clause, double jeopardy law, is constitutional policy. So what kind of policy does this court want to create? You need to craft a rule where when the government causes a mistrial, not because of some innocuous blip like a witness is not available, but because it has suppressed 260 witness interview handwritten notes containing favorable information. There has to be a consequence for that, and the consequence should not be you get a retrial. I want to address briefly, Judge Wilson, you asked again about the preservation issue. When the court had the parties come back at 1230 that day and brought the jury in to release the jury, the mistrial had already been declared that morning. The court didn't bring the jury in to declare the mistrial. The mistrial had already been declared. A subsequent objection would have been futile. The law has always been if you object once and it's denied, that's enough. If I file a written motion to suppress and it's denied, I don't then have to object again when the evidence is admitted because the error is preserved. At that point, did the district court give counsel or the parties a chance to say anything when it declared the mistrial in the morning? Two hours later when the court came out, it simply said does anyone have anything before the jury comes in? But at that point, the mistrial had already been declared over my written objection. The written objection the day before that had the conditions in it? No, the written objection was filed at 9 a.m. The court declared the mistrial at 10 or 10 30 and said it had read the filings. But it was a conditional objection. And the conditions were not met. In conclusion. But you sat there and heard the district court go through what was arguably exactly one of the conditions that you had placed. And it was not arguably. He expressly said I'm not making a finding of misconduct. But the bottom line is before the jury came back in, the district court asked counsel if they had anything else to add and you did nothing. There was nothing else to add at that point because the objection had been denied. May I may have a few. Well, I do want to ask were the jurors taking notes? I believe they were, although I'm not sure. I don't want to swear the record reflects it. I think early in the trial, it would reflect that the judge allowed the witnesses to take notes. My personal memory is they took notes. May I have 30 seconds to conclude? Well, quickly. Okay. I've got 14 and 12 year old sons. They've more than half their lives I've been working on this case. And two years ago, I tried to explain to him why the mistrial occurred. And one of them said, well, daddy, if a kid cheats on a test in school, he doesn't get to retake it. He fails the test and he doesn't get to take it again. Their consequences. And when I come home tonight, hopefully I'll be home in time to talk a minute and they're going to ask what the wise judges of this court are going to do and if they're going to let the government take the test again. And I pray that you will reverse the order denying the mistrial and you will instruct the district court to borrow a retrial based on double jeopardy or in the alternative. Give me a chance to develop the record in an evidentiary hearing. Okay. Thank you. We appreciate both sides' arguments. And this case is now under submission.